IN THE

# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF HANCOCK.

ARGUED AT JULY TERM, 1844.

MARTHA GREEN *versus* BILLINGS P. HARDY.

Where the Judge of Probate, in 1795, issued a warrant to three freeholders, directing them first to set off the widow's dower in the real estate of an intestate, then to make an appraisement of the remaining two-thirds, and to distribute the same among the heirs, if it could be done without prejudice to or spoiling the whole; and the commissioners performed the duty, returning that they had appraised the remaining two-thirds of the estate at a certain sum, and that the same could not be divided without prejudice to or spoiling the whole; and the Judge of Probate assigned "the real estate whereof the intestate died seized and possessed," and "which remains to be distributed or divided to and among his heirs or legal representatives," "an appraisement having been made thereof, and the return having been accepted," to one of several heirs, he paying to the others their respective shares of the sum at which the two-thirds were appraised; *it was held*, that if the Judge of Probate had power to assign the whole, he did not in fact make an assignment of but two-thirds.

WRIT OF ENTRY demanding four-sevenths of a certain tract of land in Deer Isle, the same assigned to the widow of John Scott, for dower in his estate. The demandant claimed one-seventh as an heir of John Scott, and three-sevenths by purchase from other heirs. The tenant claimed the whole, as having been assigned to John Scott, under whom he claimed, by the Judge of Probate, he paying out the appraised value to

the other heirs, because the estate could not be divided without prejudice to or spoiling the whole. The material facts are stated in the opinion.

C. J. Abbott, for the demandant, contended, in the first place, that there was no assignment of the reversion of the land assigned to the widow, as her dower, by the terms of the assignment. The whole must be examined and taken together to obtain the true meaning.

And, secondly, that the Judge of Probate had no power to make an assignment to one heir of the reversion of the widow's dower, while the tenancy in dower remained. *Hunt* v. *Hapgood*, 4 Mass. R. 120; *Sumner* v. *Parker*, 7 Mass. R. 79; *Wainwright* v. *Dorr*, 13 Pick. 333.

*Hathaway*, for the tenant, contended that the whole of the estate, including the reversion, was assigned to John Scott, by the Judge of Probate, by the terms of the assignment; that the Judge of Probate had power to assign the whole; and that his assignment was conclusive and final between the heirs, and those claiming under John Scott. *Rice* v. *Smith*, 14 Mass. R. 431; *Loring* v. *Steineman*, 1 Metc. 204.

The opinion of the Court, WHITMAN C. J. holding the jury term in Washington at the time of the argument, and taking no part in the decision, was drawn up by

TENNEY J. — The demanded premises are a part of that portion of the real estate of Nathaniel Scott, the demandant's father, which was assigned to his widow in 1795. He died intestate in 1794; and his widow died in 1824. The demandant, on the death of her father, became entitled by descent cast on her, to a portion of the land assigned to the widow. After the assignment of the dower, she was seized of the same portion of the reversion when the particular estate had terminated. The tenant admits the title in her, unless he establishes a claim to the same in John Scott, by virtue of a decree of assignment made by the Judge of Probate in 1796, and a transfer of the same title to himself, through several conveyances.

By the probate records in this county, it appears that a warrant, dated Sept. 16, 1795, was issued by the Judge of Probate to three freeholders of this county, directing them to divide and set off by metes and bounds, the widow's dower in the real estate of Nathaniel Scott, deceased; and then to make a just and true appraisement of the remaining two-thirds of said real estate, take a careful view of the same, and see whether it will admit of a division to and among the children and heirs of said deceased, without prejudice to or spoiling the whole; if so, divide it into as many parts as it will bear, not exceeding seven, &c. The committee, on the 27th of October, 1795, made return on said warrant, that they had set off the widow's dower as directed, and also, after a careful review, they found the remainder would not admit of a division and they appraised the two-thirds, remaining after setting off the widow's dower, at the sum of one hundred and seventy-one pounds and twelve shillings. The decree of assignment, under which the tenant claims, contains the following language. " Whereas it hath been made to appear unto me, that the real estate whereof Nathaniel Scott, late of Deer Isle, in the county aforesaid, yeoman, deceased, intestate, died seized and possessed, and which remains to be distributed or divided to and among his heirs or legal representatives, will not admit of a division and distribution to and among the said heirs or legal representatives, in proportion to their respective shares or interest therein, without great prejudice to said estate; and is convenient for one settlement only; and an appraisement having been made thereof, and the return of said appraisement having been accepted by me, and ordered to be recorded in the registry of probate for the aforesaid county; and John Scott, the eldest son of said intestate, desiring said estate may be settled on him; and having given sufficient security to the other heirs or legal representatives of said intestate for their rateable parts or proportion of said estate," &c. The proportions secured to the other heirs were their respective shares of the said sum of £171,12. Then follows the order and assignment

to John Scott, of "all the right, title and interest of the said intestate in the estate aforesaid."

The tenant contends that the decree of assignment embraces the whole of the real estate of which Nathaniel Scott died seized, including the part assigned as dower to his widow.

The Judge of Probate derived all the powers, which he possessed, from the statute in force at the time of the decree. And the authority to assign the whole of the intestate's real estate, which had not already been distributed, to one of the heirs to the exclusion of the others, was by virtue of c. 36, § 5, of the statutes of 1793. This section is a revision of the statutes of the 4 Wil. & Mar. c. 2; and of the 6 Geo. 2, c. 3, and 33 Geo. 2, c. 2, with some alterations. But so far as they apply to the question before us, the three statutes last named are similar to the former. The statute of 1793 was examined in *Sumner* v. *Parker*, 7 Mass. R. 79, and the power of the Judge of Probate to make such a decree, as would embrace the reversion of the widow's dower was denied; and the exercise thereof was held absolutely void.

We are not to suppose, however, that the Judge of Probate in the case at bar exceeded his powers, unless the language used in the assignment will admit of no other reasonable construction; and we think when the whole is examined, he did not intend that the assignment should extend beyond the two third parts remaining after the dower was set off. The assignment refers to an appraisement, made, returned and recorded, as the basis of the decree; and a distribution is made to six of the heirs of their rateable portion of the value of the two-thirds, as returned by the committee. The warrant to them authorized an appraisement of two-thirds only; and their return shows that the authority was strictly regarded. No other warrant was issued or appraisement was made. All these documents, now matters of record, must be taken as material parts of the decree of assignment.

But we do not think the language used in the assignment itself will necessarily embrace the land in dispute. The de-

Green *v.* Hardy.

scription consists of two clauses : — 1st, " the real estate where-
of Nathaniel Scott died seized and possessed," and 2d, " and
which remains to be distributed or divided to and among his heirs
or legal representatives." The two clauses must be taken to-
gether, and the second controls the first, so far that the land
intended, is that to which both will apply. And the construc-
tion will be, that it was such land of which Nathaniel Scott
died seized, as remained to be distributed among his heirs,
after the assignment of the widow's dower.

*Defendant to be defaulted, and judgment for four-
seventh parts of the demanded premises, and costs.*